**DISTRICT OF OREGON**
**F I L E D**
**July 31, 2026**
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_David W. Hercher_
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re

**Laura Marie Jaap**,

Debtor.

Case No. 23-62108-dwh7

**MEMORANDUM DECISION DENYING TRUSTEE'S MOTION TO APPROVE SETTLEMENT WITH DEBTOR**[1]

## I.    Introduction

The chapter 7 trustee, Kenneth Eiler, has moved for authority to settle with debtor, Laura Jaap.[2] A creditor, Bruce Nelson, objects.[3]

In the motion, Eiler moves for approval of a transaction in which he would sell Jaap the estate property, including the estate's claims against

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.
[2] ECF No. 567.
[3] ECF No. 572.

Page 1 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

others (whom I will call targets). The transaction is not a settlement; it is a sale. Because Eiler has not solicited purchase offers from targets, his proposed sale of the claims would not satisfy his duty to maximize the claims' proceeds.

I will deny the motion.

## II.    Facts

At the February 12, 2026, hearing, I heard testimony from Eiler, and I admitted Exhibits 1 through 5, A, B, F, and G. Exhibits 1 through 4 were filed as ECF No. 643. Exhibit 5 is filed as ECF No. 648. Exhibits A, B, F, and G were filed as ECF No. 646. I credit Eiler's testimony described below and otherwise find each of the following facts.

### A.    *Bankruptcy-case filings before settlement motion*

On November 13, 2023, Jaap filed her petition under chapter 11, subchapter V, of title 11, U.S. Code. Eiler was appointed subchapter V trustee.[4] On February 12, 2024, Jaap filed her chapter 11 plan.[5]

Jaap's original lawyer in this case, Ted Troutman of Troutman Law Firm, PC, was permitted to withdraw on September 25, 2024.[6] On November 22, 2024, confirmation of Jaap's proposed second amended plan was denied, this case was converted to chapter 7, and Eiler was appointed

---

[4] ECF No. 5.
[5] ECF No. 103.
[6] ECF No. 386.

Page 2 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

chapter 7 trustee.[7] Jaap filed postconversion schedules and a statement of financial affairs (SoFA).[8]

Among the assets Jaap scheduled are several parcels of real estate, a beneficial interest in a trust, and claims against targets. The trust is described as "The Medford Family Trust – Spend Thrift Trust – Excluded from Estate," which she valued at $0.[9] She claimed the trust as exempt.[10]

The claims against others are listed in the asset schedule in item 33, entitled "claims against third parties," and in item 34, entitled "other contingent and unliquidated claims." In item 33, Jaap listed "potential malpractice complaint" against Troutman, with the value unknown.[11] In response to item 34, "other contingent and unliquidated claims," she listed 19 names.[12] Two of the 19 are listed in one entry, so the claims appear as 18 entries in item 34. The item 34 targets are Caroline Anthony, Anna Black, Brightstar Partners LLC, Shannon Cao, Jeannette Cerna, Brian Gene Coughran, Ellen Marie Coughran, Jessica Eldridge, Fairfield Financial Services, Michael Garcia, Dakota Griesel, Sharon Jabari, Bruce Moore, Nelson, Dallis Rohde, Rick Peichenberger, Gary Rinne, Troy Slonecker, and Val Zavekyuk.

---

[7] ECF Nos. 441, 444.
[8] Ex. 2, ECF Nos. 476, 643.
[9] Ex. 2, ECF Nos. 476, 643-2, Sched. A/B item 26.
[10] Ex. 2, ECF Nos. 476, 643-2, Sched. C item 2.
[11] Ex. 2, ECF Nos. 476, 643-2, Sched. A/B item 33.
[12] Ex. 2, ECF Nos. 476, 643-2, Sched. A/B item 34.

With the one item 33 claim and the 19 item 34 claims, there are 20 potential claims against targets.

### B.    Medford trust

The trustors of the Medford trust were Billy Medford and Beverly Medford. The original trustees were the trustors and Denise Barnum. Beverly was the mother of Barnum and Jaap.[13] Under the trust instrument, all tangible personal property is to be distributed to the trustors' children, including Jaap,[14] after which the trustee may distribute 10 percent of the remainder of the Medford trust estate as the trustee decides in the trustee's sole discretion.[15] The remainder of the trust estate is to be divided among beneficiaries, including Jaap, who is entitled to receive 20 percent.[16] Under a paragraph entitled "Spendthrift Protection," no beneficiary can transfer the beneficiary's interest in the trust or income produced thereby.[17]

### C.    State-court action

On March 25, 2025, after this case was converted to chapter 7, Jaap and two entities filed an action in Lane County, Oregon, Circuit Court, against 23 defendants.[18] Jaap's participation in the action had not been approved by Eiler or this court. The plaintiffs are represented by Christopher Cauble.

---

[13] Ex. 1, ECF No. 643-1 at 1, Art. II.
[14] Ex. 1, ECF No. 643-1, at 7–8, Art. XI.A.
[15] Ex. 1, ECF No. 643-1 at 8, Art. XI.B.
[16] Ex. 1, ECF No. 643-1 at 8, ¶ XI.C.4.
[17] Ex. 1, ECF No. 643-1 at 14 ¶ XX.E.
[18] Ex. 4, ECF No. 643-4.

Page 4 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

Seven of the targets, including Nelson, were defendants in the state-court action when Jaap was a plaintiff.[19] The plaintiffs filed an amended complaint on April 24, 2025, removing one defendant, and they filed a second amended complaint on June 20, 2025, removing Jaap as a plaintiff and two targets as defendants. Nelson remains a defendant.[20]

In a motion Cauble filed September 29, 2025, the plaintiffs asked the state court to continue the action as pending. As grounds for the motion, Cauble referred to "amending the Operative Complaint for service with individual's claims," and he said, "[a]s soon as the Bankruptcy Court releases our client, we will be filing the third amended complaint and serving all the involved defendants."[21] The motion implies that, if Jaap acquires the estate assets, Cauble expects the complaint to be further amended to add her back as a plaintiff and to add back Brightstar and Cao as defendants.

### D.   Real estate

Eiler is unable to monetize Jaap's real estate. Secured creditors have said, in stay-relief motions or otherwise, that the properties have no equity or are undevelopable. Most of the properties are held indirectly through entities. Cao asserts a judgment lien on all real and personal estate property.

Eiler has explored possible short sales of real property, but there have been multiple owners, so it would be difficult to determine the properties' tax

---

[19] Ex. 2, ECF Nos. 476 & 643, Sched. A/B item 34.
[20] Ex. 4, ECF No. 643, at 2.
[21] Ex. G, ECF No. 646-7, at 2:15–18, 3:7–9.

bases and depreciation, and capital-gain tax and accountant fees could be "way more" than any small amount that the estate could net from any short-sale carveouts from the property sales.

### E. Settlement motion

#### 1. Background

On May 5, 2025, after Eiler learned of the state-court action, he asked whether Cauble would pursue Jaap's claims for the estate on a contingency-fee basis; Cauble declined. Eiler received the same answer to that question asked of the law firm representing him in this case.

Eiler said Jaap has a poor reputation for credibility, which would dissuade potential contingency-fee counsel from handling the claims for Eiler. The estate has no funds to pay for an hourly-rate lawyer, so Eiler decided that he would have to take some action to stop Cauble from purporting to prosecute a prepetition claim on behalf of the debtor. But Eiler preferred to resolve the claims asserted by Jaap in a way that would benefit the estate.

After deciding on the form of the proposed transaction with Jaap that appears in the settlement motion, Eiler encouraged Barnum's lawyer to focus on listing and selling the Medford trust's real property, the former residence of Beverly, who is deceased. Eiler chose July 23, 2025, as the date to file the motion because he was concerned about the possibility of losing the settlement if he had delayed filing the motion.

Page 6 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

### 2.    Contents

#### (a)    *Relief sought*

In the motion, Eiler proposes to abandon the estate's ownership of all nonexempt assets described in the conversion schedules in exchange for "50% of the distribution that the debtor will eventually receive from the Medford Trust."[22]

#### (b)    *Narrative*

In an exhibit to the motion, Eiler added information about the Medford trust, scheduled assets, the state-court litigation, and Jaap's personal belongings and vehicles.

When the motion was filed, the trust held cash and the residence. The residence was being liquidated by Barnum, who had retained a realtor to list the residence for sale.

Eiler has determined that Jaap's interest in the trust is shielded from creditor claims by the spendthrift provision, so the trust is not property of the bankruptcy estate. Nelson does not challenge that determination. The trust holds "roughly $900,000 in cash," various personal belongings of the decedent to be divided among the beneficiaries, and the decedent's former residence with an "estimated fmv per Zillow" of $445,000. Before making distributions from the trust, the trust will need to pay its administrative expenses that

---

[22] ECF No. 567 at 1.

Page 7 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

Barnum has incurred, after which Jaap will be entitled to receive 20 percent of the distribution.[23]

Jaap's interest in her scheduled real properties has been a matter of dispute, and some creditors believe the properties belong not to her but instead to "her various LLC entities" and that the prepetition transfers of those properties to her are void or voidable; Jaap disagrees. Secured creditors claim that the properties are over-encumbered and that their liens attach to income from the properties; Jaap again disagrees. One creditor claims that its judgment lien has priority over previously recorded trust deeds. Litigation to resolve those claims would be costly and time-consuming, the outcome would be uncertain, and the estate lacks funds to retain counsel to pursue the claims. Some of the targets are also creditors, and some are lawyers who represent targets or who previously represented Jaap.[24]

It is clear to Eiler that the allegations against the defendants will be vigorously disputed and costly to litigate.[25]

Jaap's personal belongings and vehicles do not have significant nonexempt value more than liquidation costs, and she has sometimes maintained that those assets belong to others. Some creditors have also maintained that those assets belong to her entities, not her.

---

[23] ECF No. 567 at 3–4.
[24] ECF No. 567 at 4.
[25] ECF No. 567 at 4–5.

### 3.   Settlement agreement form

Eiler has prepared a form of settlement agreement among himself, Jaap, and Barnum. Eiler's conveyance to Jaap would be conditioned upon receipt of Jaap's payment to him.[26]

### F.   *Medford trust distribution*

During the chapter 11 phase of this case, Jaap mentioned to Eiler that she expected to receive $200,000 from the Medford trust, half of which would have been $100,000. No one has ever offered to pay him anything for the right to receive the trust distribution.

On February 6, 2026, Barnum filed in the circuit court a petition to approve distribution of the trust estate.[27] According to that petition, the trust estate holds cash of $1,402,652.43[28] and no longer owns the residence. The tangible personal property, including jewelry, has been distributed to the trustors' children, including Jaap.[29] The trust owes no debts other than for winding-up fees of professionals and "some possible" income tax liability to be determined when fiduciary income-tax returns are prepared.[30] Barnum requests a reserve "in the approximate amount of $70,000" for payment of "final fiduciary income taxes yet to be determined" and "final expenses of administration."[31] She later says that the cash on hand less the reserve is

---

[26] Ex. 3, ECF No. 643-3 at 3 ¶ 2.
[27] Ex. 5, ECF No. 648.
[28] Ex. 5, ECF No. 648, at 2:5–8.
[29] Ex. 5, ECF No. 648, at 2:21–25.
[30] Ex. 5, ECF No. 648, at 2:9–14.
[31] Ex. 5, ECF No. 648, at 2:14, 5:1–3.

Page 9 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

$1,335,000,[32] which implies that the actual reserve amount is $67,652.43. Of the remaining $1,335,000, Barnum would exercise the power of appointment to distribute 10 percent, or $133,500.[33] The balance of $1,201,500 would be distributed among the beneficiaries, with 20 percent, or $240,300, to be paid to Jaap.[34] The income-tax returns are yet to be prepared.[35] Any portion of the reserve not expended on final administration expenses would be distributed in proportion to their shares under the trust.[36]

If the amount distributed to Jaap in fact turns out to be $240,300, Eiler's one-half would be $120,150. He expects the payment to be $120,000.

### G.      Eiler's ability to monetize nonclaim assets

I accept Eiler's assessment that the likelihood that he could monetize any nonexempt equity in the real estate and tangible personalty is so remote as not to warrant any further effort.

### H.      Alternatives to proposed transaction with Jaap

Neither Nelson nor any other target had offered to buy the claims against them. Nelson's lawyer said Eiler had reached out to Nelson through the lawyer, and Nelson made neither a "bid on the asset" nor a settlement proposal. Nelson's lawyer "did not know what [Nelson] would have done" had Eiler specifically solicited from Nelson an offer to buy the claim against

---

[32] Ex. 5, ECF No. 648, at 3:26.
[33] Ex. 5, ECF No. 648, at 3:1–7.
[34] Ex. 5, ECF No. 648, at 4:16–17.
[35] Ex. 5, ECF No. 648, at 4:3–4.
[36] Ex. 5, ECF No. 648, at 4:3–8.

Page 10 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

Nelson. The lawyer said, "there was certainly some incentive to settle, but that process didn't play out."

Eiler has not reached out to any target other than Nelson. In explanation, Eiler said, "there's a lot of bad feeling" and "some pretty bad feelings" by creditors toward Jaap, mostly due to her "attempts to keep assets away from creditors and to challenge creditors' claims and rights," and he could not imagine any targets paying anything for the claims against themselves, and none had offered.

If the motion is not granted, Eiler expects that he will abandon all estate assets, leaving the estate with nothing to distribute and Jaap with the entire trust distribution.

## III.    Jurisdiction and authority

The district court has jurisdiction over the settlement motion, which is a civil proceeding arising in this case.[37]

The district court has referred to this court all bankruptcy cases and proceedings in this district.[38] The motion is a core proceeding,[39] which this court may hear and determine.[40]

---

[37] 28 U.S.C. § 1334(b).
[38] LR 2100-(2)(a)(1).
[39] 28 U.S.C. § 157(b)(2)(N), (O).
[40] 28 U.S.C. § 157(b)(1).

## IV.   Analysis

### A.   *Eiler's proposed transaction is not a settlement; it is a sale.*

A compromise is "[a]n arrangement . . . for settling a dispute . . ."[41] or "[a]n agreement between two or more persons to settle matters in dispute between them."[42] A settlement is "an agreement by which parties having disputed matters between them reach or ascertain what is coming from one to the other"[43] or "[a]n agreement ending a dispute or lawsuit."[44]

Eiler's proposed transaction would not settle any dispute between the estate and Jaap; no lawsuits are pending or threatened between them, and the targets are not parties to the settlement agreement. In that way, this case is like the Ninth Circuit Bankruptcy Appellate Panel's 2022 decision in *Do v. Eiler* (*In re Portland Injury Institute, LLC)*,[45] in which the court held that a chapter 7 trustee's sale of claims need not be "analyze[d] . . . under the settlement standard when such claims are sold to a third party who is not a potential defendant." Eiler's motion uses the "release" as a synonym for "convey." He would "release" to Jaap the scheduled estate assets; no claims against Jaap herself are scheduled. The transaction thus does not fit the definition of either compromise or settlement.

---

[41] Black's Law Dictionary (4th rev. ed. 1968).
[42] Black's Law Dictionary (12th ed. 2024) (def. 1).
[43] Black's Law Dictionary (4th rev. ed. 1968).
[44] Black's Law Dictionary (12th ed. 2024) (def. 2).
[45] BAP No. OR-21-1138-GTB, 2022 WL 263490, at *4 (B.A.P. 9th Cir. 2022).

Ownership of abandoned estate property reverts to the debtor,[46] ordinarily because the property is burdensome or of inconsequential value and benefit to the estate and thus without payment by the debtor.[47] Because Jaap will pay for the property, what Eiler describes in the notice as abandonment is actually a sale to her.

Although the parties' papers have framed the issue as whether Eiler's proposed transaction should be approved as a settlement, Nelson's lawyer argued at the hearing that the transaction is "not just a settlement, but . . . a sale of claims" and "a sale of assets to" Jaap, and "this sale should be looked at under [section] 363 [of title 11] as well." In response, Eiler's lawyer argued that the transaction is "more in the nature of a [Federal Rule of Bankruptcy Procedure] 9019 [settlement] than it is a 363 sale," without objecting to any consideration of whether the transaction is a sale. But he later conceded that the transaction "doesn't fit squarely" in the factors governing settlement approval. Accordingly, whether the transaction should be approved as a sale was added to the framing of the question presented by the motion by the parties themselves.

Because the proposed transaction is a sale out of the ordinary course of business, section 363(b)(1) permits it only after notice and a hearing—such notice and hearing opportunity as is appropriate in the circumstances.[48] The

---

[46] Milkovich v. United States, 28 F.4th 1, 4 (9th Cir. 2022).
[47] 11 U.S.C. § 554(a).
[48] 11 U.S.C. § 102(1)(A).

Page 13 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

notice of and opportunity for hearing on a proposed sale out of the ordinary. course of business is prescribed by Rule 2002. Rule 2002(a)(2) requires that a sale notice be mailed to creditors and the debtor and include a 21-day objection deadline; the same requirement applies to notice of a proposed settlement,[49] and Eiler complied with it.

### B.     I agree with Nelson that Eiler should solicit bids from targets other than Nelson.

Nelson argues that "inviting offers from parties in Schedule [A/]B [the targets] . . . would likely result in immediate and concrete recovery."[50] At the hearing, Nelson's lawyer conceded that Eiler had reached out to Nelson (through the lawyer), and Nelson had not made an overbid. The lawyer argued that Eiler should "take another crack at it and also open up communication with Mr. Nelson and other potential claim defendants as to acquisition of individual claims . . . ."

Eiler's lawyer argued that the settlement motion was sufficient notice of the opportunity to present Eiler with an overbid. The lawyer also pointed to Eiler's testimony that he has not solicited offers from the targets other than Nelson to buy the claims against them because the targets, or at least those who are creditors in this case, are so upset with Jaap that he cannot imagine them paying anything for the claims against them.

---

[49] Fed. R. Bankr. P. 2002(a)(3).
[50] ECF No. 572 at 5.

Page 14 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

Section 704(a)(1) requires a trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest . . .." In the Fourth Circuit's 1993 decision in *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, the court held that the section protects "pecuniary interests . . . directly affected by the bankruptcy proceedings."[51] The statute imposes on the trustee two duties that are in tension with each other. On one hand, the trustee must monetize property quickly so that the estate can be closed quickly; on the other hand, the monetization speed must be "compatible with" the estate stakeholders' pecuniary interests. The Supreme Court has cited the statute for the proposition that a trustee must "maximize the value of the estate"[52] The *Hutchinson* court held that, because the interests in speed and value maximization are in tension, they must be balanced.[53] Implicit in section 704(a)(1) is the trustee's duty to consider an asset's monetization options and each option's relevant attributes, including the likely price, time before closing, cost of negotiating and documenting the transaction, and risk that the transaction will fail to close. The discretion to select among monetization options is not the discretion to decline to consider

---

[51] 5 F.3d 750, 756 (4th Cir. 1993) (cleaned up) (citing 11 U.S.C. § 704(1), redesignated § 704(a)(1), Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 102(c)(1), 119 Stat. 23, 32 (2005)).
[52] Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352 (1985) (citing section 704(1)).
[53] *Hutchinson*, 5 F.3d at 754.

Page 15 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

options beyond the first one that presents itself. The trustee need not always solicit offers from every conceivable buyer of an asset. But when there is an obvious alternative to a buyer initially identified by the trustee, and solicitation of a bid from the alternative buyer would be quick and inexpensive, the trustee may not pursue just the first option without investigating whether the second option would, under all the circumstances, better serve the dual interests that the trustee must balance to comply with the statute.

The two most likely buyers of an estate's claim are the debtor and the target. Even if the target is convinced that it would successfully defend the claim in litigation, its defense of litigation by the debtor would impose some cost and inconvenience on the target, giving it an economic incentive to pay the trustee something to acquire the claim for itself. That incentive is strongest for a target who has already been sued by the debtor. If the trustee receives a purchase offer from the debtor, the trustee usually can quickly and inexpensively contact the target to solicit an overbid. In making that solicitation, the trustee need not even implicitly ratify or endorse the debtor's claimed factual or legal bases for the claim; instead, the trustee can explain that, unless the target buys the claim or settles with Eiler, the claim is likely to be conveyed to the debtor by sale or abandonment. To satisfy the solicitation duty before selling to the debtor, the trustee can demonstrate that the target could not be reached or declined to bid or that the target's bid,

Page 16 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

under all the circumstances, is not better than the amount the trustee would receive from the debtor.

Here, Eiler has not solicited bids from 19 of the 20 targets (everyone but Nelson). Eiler's only explanation is, in essence, that doing so would be futile because creditor-targets are too upset with Jaap for how she has behaved toward them to pay anything for the claims. Although it is plausible that the creditor-targets are upset with her, it is not plausible that all of them are so upset that they are irrationally unwilling to consider the benefit of paying something to acquire the claims and thus avoid the potentially greater risk, delay, and inconvenience of defending her litigation over the claims. Even if no one target would choose to pay Eiler more than $120,150 to avoid being sued by Jaap, two or more of the 20 targets might make a joint offer or separate offers in a total amount that exceeds $120,150 by a sufficient margin to offset the additional cost, inconvenience, and risk of his pursuit of a sale to a group of targets rather than the package sale to Jaap. Eiler did not say that he had considered those factors and decided that the amounts the targets might agree to pay would be insufficient; he just said he could not imagine them agreeing to pay anything. All targets have an incentive to buy the claims against themselves; if Eiler were to sell fewer than all claims, Eiler could sell or abandon the unsold claims to Jaap. He did not argue that it would be difficult for him to contact the targets; for all but one of them (Brightstar), addresses have been filed in this case, either by Jaap in the

Page 17 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

postconversion schedules[54] or earlier schedules[55] or by the targets themselves in proofs of claim filed by them as creditors[56] or signed by them as lawyers for creditors.[57]

I do not find that it is necessarily likely that targets other than Nelson would offer Eiler enough to warrant the conclusion that a sale to the targets is preferable to the proposed sale to Jaap. But I hold that Eiler should ask whether they would do so.

Because Eiler has not solicited offers from the targets, other than Nelson, to buy the claims against them, Eiler's proposed sale to Jaap would not satisfy his duty to maximize the proceeds of the claims. I do not hold that he cannot now do that solicitation and, if the circumstances warrant, renew the motion.

---

[54] Ex. 2, ECF Nos. 476 & 643, Sched. E/F item 4.3 (Anthony); Ex. 2, ECF Nos. 476 & 643, Sched. D item 2.56 (Cao); Ex. 2, ECF Nos. 476 & 643, Sched. E/F item 4.8 (Cerna); Ex. 2, ECF Nos. 476 & 643, Sched. D item 2.1 (Coughrans); Ex. 2, ECF Nos. 476 & 643, Sched. D item 2.11 (Fairfield); Ex. 2, ECF Nos. 476 & 643, Sched. D item 2.9 (Nelson); Ex. 2, ECF Nos. 476 & 643, Sched. E/F item 4.15 (Peichenberger, spelled *R*eichenberger in the schedule); Ex. 2, ECF Nos. 476 & 643, Sched. E/F item 4.5 (Rinne, spelled R*e*nne in the schedule); Ex. 2, ECF Nos. 476 & 643, Sched. E/F item 4.20 (Troutman, listed as Troutman Law Firm, PC, in the schedule); Ex. 2, ECF Nos. 476 & 643, Sched. E/F item 4.23 (Zavekyuk, spelled Zave*d*yuk in the schedule).
[55] ECF No. 19, Sched. G item 2.1 (Black); ECF No. 19, Sched. G item 2.6 (Griesel).
[56] Proof of claim 44-1 (Eldridge); Proof of claim 8-1 (Garcia); Proof of claim 30-1 (Jabari).
[57] Proof of claim 8-1 (Moore for Garcia); Proof of claim 34-1 (Rohde for Cao); Proof of claim 45-1 (Slonecker for Eldridge).

### C.    *I disagree with Nelson's other arguments.*

####     1.    **The motion adequately describes the property to be conveyed.**

Nelson argues that the settlement motion does not "adequately describe . . . Debtor's purported claims against various individuals and entities," which Eiler proposes to convey to Jaap.[58] Nelson also argues that the motion does not "clearly specify whether it includes claims Debtor asserted in the state court action but failed to disclose in her schedules"[59] or "claims the estate might have" against Jaap herself based on her filing of the state-court action without Eiler's consent.[60]

Rule 2002(c)(1)(A) requires that a sale notice include "a general description of the property" to be sold. The motion defines the assets to be conveyed as "all nonexempt assets described in the conversion schedules filed at Dkt.#476," a publicly available document. Any unscheduled estate claim, including any claim against a present or future defendant who is not a target or any claim against Jaap herself, would not be conveyed.

The motion sufficiently describes the property to be conveyed.

####     2.    **The motion adequately describes the price Eiler expects to receive from Jaap.**

Although the settlement motion does not specify a dollar amount that Jaap will pay, that's because the source of Jaap's payment is her future

---

[58] ECF No. 647 at 4 pt. A.
[59] ECF No. 647 at 5 pt. A.
[60] ECF No. 647 at 6 pt. D.

Page 19 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

Medford trust distribution, which will be in an amount that had not been fixed when the motion was filed. No principle of law forbids a trustee from selling estate property for a formula-based price, such as selling a commodity for the published rate as of the date the sale closes. The only way Eiler could have eliminated any uncertainty about the price Jaap will pay would have been to wait to file the settlement motion until she had received her trust distribution. By filing the motion in July 2025, without waiting for the trust distribution to be fixed, he created the possibility that the motion could have been approved as soon as possible, reducing the risk that Jaap would change her mind due to the passage of time.

A reader of the motion could have determined that, if the residence was sold for its estimated value, the amount distributable from the Medford trust would be $1,345,000, less the residence-sale closing costs and the estate's administrative expenses, and Eiler would receive 10 percent (half of Jaap's 20 percent) of the distribution to trust beneficiaries, or $134,500, less 10 percent of the sum of the residence-sale closing costs and the trust's administrative expenses. The reader would have been as able as Eiler to estimate the net residence-sale proceeds and the trust's administrative expenses and thus the amount that Eiler would receive from Jaap.

Page 20 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

### 3.   The motion need not state the value of the assets to be conveyed.

Nelson argues that the settlement motion "does not specifically identify the assets' . . . value . . .."[61]

No rule requires that notice of a private sale include the value of the property to be sold or any other information other than a general description of the property and the sale's terms and conditions.[62] A statutory requirement that estate property to be sold first be appraised was part of the Bankruptcy Act of 1898[63] but not carried forward to the Bankruptcy Code enacted as part of the Bankruptcy Reform Act of 1978.[64] What matters to the estate's stakeholders is not property value in the abstract but the price that can actually be obtained when the trustee complies with the duty, discussed in part IV.B above, to compare actual monetization options and select the one that best serves the estate.

### 4.   Eiler's failure to further investigate the merits of the claims is not a reason to deny the motion.

Nelson argues that Eiler should have investigated the merits of the claims against the targets; by the hearing, that challenge was limited to the claims against the nondefendant targets, presumably because the other claims are articulated by Jaap in the state-court complaint. Eiler testified to

---

[61] ECF No. 647 at 4–5, pt. A.

[62] Fed. R. Bankr. P. 2002(c)(1)(A), (C).

[63] Act of July 1, 1898, ch. 541, 30 Stat. 544, 11 U.S.C. §§ 110(f) (1976, repealed 1978).

[64] An Act To establish a uniform Law on the Subject of Bankruptcies, Pub. L. No. 95-598, § 101, 92 Stat. 2549 (1978).

Page 21 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

circumstances suggesting reasons to be skeptical of the merits of specific claims, groups of claims, and all claims by Jaap, but he did not recall what he had been told by Jaap's lawyer about the claims' merits.

As is true for estate property generally, what matters to the estate's stakeholders is not the objective merits of an estate claim but whether the trustee has tested the market by soliciting bids from targets.

In any case, it is unlikely that a further investigation by Eiler into the merits of the claims would provide reliable information. To conduct that investigation, he would need to obtain testimony and any relevant documents from both Jaap and the target. The target would have no incentive to volunteer information, and to compel information from the target, Eiler would need to obtain a court order, issue and serve a subpoena, and depose the target. Even with all relevant information from both Jaap and the target, a useful evaluation of the merits of a claim would require the application of legal judgment, but this estate lacks funds with which to hire a lawyer, and a trustee who happens to be a lawyer is not obliged to provide the estate with legal services for which it cannot pay. And requiring Eiler to reveal information about the merits of the claims would be contrary to the estate's interest; if the information supports the transaction, it does so because it raises a doubt that the claims are in fact valid and collectable. Revealing that information to Jaap and the targets could depress bidding.

Page 22 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

Eiler's failure to further investigate the merits of the claims against the nondefendant targets is not a reason to deny the motion.

### 5.  The proposed package sale to Jaap did not prevent overbids for the package.

Nelson argues that Eiler's proposed package sale to Jaap prevented creditors from overbidding for the package because they could not tell from the motion how much Jaap would pay and thus what amount would be an overbid.[65]

Someone interested in competing with Jaap to buy the package could have proposed a fixed-price competing bid for the package, to be paid upon court approval. Eiler could have compared that offer to the amount he expects Jaap to pay and evaluated the certainty and speed of the competitor's bid in deciding whether to treat it as an overbid, which he could have chosen to accept or at least would have had to report to the court.

But no creditor made a competing offer to buy the package. By the time of the hearing, Nelson had had the trust's distribution petition for two days, showing that if the transaction closes, Eiler will receive $120,150. And even with that information at the hearing, Nelson still had not overbid, and his lawyer conceded that "the package as a whole is only something that's of interest to the debtor."

The settlement motion did not prevent overbidding for the package.

---

[65] ECF No. 572 at 2, 5.

Page 23 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

#### 6.    Eiler was not required to demonstrate his or Jaap's good faith in negotiating the sale.

At the hearing, Nelson's lawyer argued that "a trustee's asset sale must be negotiated and proposed in good faith" and that the entity plaintiffs' motion to continue the state-court action as pending demonstrated "the ongoing efforts by Ms. Jaap to delay and cause financial harm to parties" and thus her bad faith as the asset buyer.

Good faith can be relevant when a bankruptcy court's order approving a sale is on appeal. Under section 363(m), reversal or modification of the approval order does not affect the sale's validity if the buyer buys in good faith. But here, Eiler has not requested that I find that Jaap will be a buyer in good faith. And good faith is not a standalone prerequisite to approval of a sale by the bankruptcy court.[66]

Nelson's lawyer said at the hearing that he did not believe Eiler was not acting in good faith.

#### 7.    That Jaap might not have agreed to the transaction is not a reason to disapprove it.

Nelson complains that the motion does not state that Jaap has agreed to Eiler's proposed transaction.[67]

The record does not reflect whether Jaap has agreed to the transaction. But a trustee need not enter into a binding agreement to sell estate property

---

[66] *See* Thomas v. Namba (*In re* Thomas), 287 B.R. 782, 785–86 (B.A.P. 9th Cir. 2002).
[67] ECF No. 572 at 5; ECF No. 647 at 3, 5 part B.

Page 24 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

out of the ordinary course before giving notice of the intent to sell. At worst, if the transaction is authorized and Jaap declines afterward to agree to it, the transaction will not close. But that is not a reason to deny Eiler authority to perform the transaction if she does agree to it.

### 8. That Jaap might disclaim her Medford trust distribution is not a reason to disapprove the transaction.

Nelson argues that Jaap "could get out of" the transaction "by disclaiming her inheritance under Oregon law."[68]

If Jaap performs the transaction, she will receive half her Medford trust distribution and all the bankruptcy estate property. By contrast, if she disclaims the trust distribution, she would receive nothing from the trust, and because Eiler will condition his conveyance to her on receipt of her payment to him, she would also receive nothing from Eiler.

The possibility that Jaap might choose to disclaim her trust distribution is not a reason to disapprove the motion.

### 9. Eiler need not consider Nelson's interest in not being sued by Jaap.

At the hearing, Nelson's lawyer argued that Eiler's choice to sell Jaap all the assets—including all the claims against targets—in a single transaction deprived the targets of the ability to overbid "as to their specific claims that were being sold." He also argued that the proposed sale to Jaap would enable her to "continue very high-stakes state-court litigation that the

---

[68] ECF No. 647 at 5 pt. B.

Page 25 – MEMORANDUM DECISION DENYING TRUSTEE'S etc.

trustee has declined to step into" and would be "just turning the debtor loose on another round of ability to litigate and . . . make life difficult for her creditors."

Eiler owes duties only to the estate and its pecuniary stakeholders, including creditors and, if the estate is solvent, the debtor; he owes no duty to targets *as targets*—even those who are coincidentally creditors. In fact, Nelson's interest as a target in not being sued is directly adverse to the estate and its pecuniary stakeholders.

## V.    Conclusion

I will prepare a separate order denying the motion.

# # #